Susie Myers PERKINS, Administratrix
of the Estate of John David Perkins,
Jr., Deceased, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 94–1573.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 1, 1995.

Decided April 18, 1995.

**ARGUED:** Isaac Norris Kantor, Sr., Katz, Kantor & Perkins, Bluefield, WV, for appellant. Donald Lee Stennett, Asst. U.S. Atty., Charleston, WV, for appellee. **ON BRIEF:** Rebecca A. Betts, U.S. Atty., Stephen M. Horn, Asst. U.S. Atty., Charleston, WV, for appellee.

Before MICHAEL and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Susie Myers Perkins appeals from the dismissal of her wrongful death action, brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (FTCA). We affirm.

### I

John D. Perkins died on July 21, 1991, of asphyxiation due to oxygen deficient air, in the portal of the Double E Mining Number 1 Mine, located at Coal Mountain, Wyoming County, West Virginia. An investigation by the U.S. Department of Labor, through the

Mine Safety and Health Administration (MSHA), revealed the following facts.[1]

Before April 12, 1991, Double E Mining, Inc. operated Double E Mining No. 1 Mine under a lease from Island Creek Coal Company. Double E Mining may have been using equipment there that was owned by Marcus Coal, a delinquent taxpayer. The mine ceased production on April 12, 1991, and the property reverted to Island Creek. Island Creek began to seal the mine, but was compelled to discontinue the operation by Internal Revenue Service (IRS) Agent Thaddeus Smyth. Agent Smyth advised that the IRS had obtained a seizure order for Marcus Coal's mining equipment, which was believed to be located underground, and had engaged someone to pump water out of the mine and retrieve the equipment so it could be sold in payment of delinquent federal taxes.[2]

In July 1991, Agent Smyth orally contracted with John D. Perkins and Robert Neal to remove the equipment from the mine. Neal identified himself as Vice-President of B & H Retrieving Company, a licensed, certified, and bonded mine retrieval company. On July 17, 1991, at Smyth's direction, Perkins, Neal, Keith Lunsford, and Fred Powers began dewatering operations at the mine in an effort to lower the water level to allow recovery of the equipment. On July 17, 1991, Lunsford and Powers were overcome by contaminated air in the portal of the mine, but were rescued before they died. They informed Agent Smyth of the incident, but he ordered them to continue the recovery operation.

The men were operating the dewatering pumps 24 hours per day and sleeping in a shack near the mine when they needed rest. On the night of July 20, 1991, Perkins reportedly turned off the main ventilation fan for the mine because it was disrupting his sleep. At approximately 2:00 a.m. on July 21, Perkins went into the mine alone, apparently to check on the pumps, was overcome by oxygen-deficient air, and died of asphyxiation. Lunsford discovered his corpse thirty feet inside the portal of the mine at approximately 3:30 a.m.

MSHA made the following findings:

The accident and resultant fatality occurred because the main fan was not operating, and pre-shift examinations were not conducted. Contributing factors were the fact that a certified foreman was not present on the mine site and that instruments to test for methane and oxygen deficiency were not properly maintained in an operative condition.

J.A. 8–9. MSHA also determined that several other safety violations had contributed to Perkins's death. Despite these findings, MSHA withheld the issuance of citations "because the equipment recovery activities were under the control of the [IRS], a government agency," and because Perkins had "died in the performance of a Federal Government function." J.A. 9, 11.

Claiming that Perkins's death was caused by the negligence of the United States and its agents in numerous particulars, including violating federal and state regulations governing coal mining, 30 C.F.R. §§ 75.300, et seq., W.Va.Code §§ 22A–2–3, et seq., violating Internal Revenue Manual provisions governing seizure of assets, and failing to notify the MSHA of operations at the mine designed to recover the mining equipment, his widow first filed an administrative tort claim, which the IRS denied. She then brought this wrongful death action against the United States as the administrator of Perkins's estate.

The United States moved to dismiss the action on two grounds: first, that the action was a claim in respect of the assessment or collection of taxes and was therefore excepted from the waiver of sovereign immunity under the FTCA and, second, that Mr. Perkins was an employee of the United States whose sole remedy is under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, et seq. The district court granted the motion on the first ground, and consequently did not

---

1. Representatives from Island Creek Coal Company, B & H Retrieving Company, the Internal Revenue Service, and the West Virginia Department of Energy also joined in the investigation.

2. The president of Marcus Coal was being assessed a 100% penalty for the company's unpaid tax withholdings.

reach the question whether Perkins was a federal employee.

Mrs. Perkins then filed motions to alter or amend the district court's judgment (styled as a motion for reconsideration) under Fed. R.Civ.P. 59(e) and for leave to file an amended complaint under Fed.R.Civ.P. 15(a), adding herself in her individual capacity and her child as additional plaintiffs and adding three new counts, namely, negligent supervision of Smyth by his supervisors, loss of parental consortium, and loss of spousal consortium. The district court denied both motions, thereby reaffirming its original order granting the United States' motion to dismiss. *Perkins v. United States,* 848 F.Supp. 1236 (S.D.W.Va.1994).

Mrs. Perkins then took this appeal in which she challenges the propriety of the dismissal of her action and, specifically, the district court's finding that Agent Smyth's actions fell within the "assessment and collection of taxes" exception to the FTCA.

## II

As sovereign, the United States enjoys immunity from suits for damages at common law. The FTCA is a limited statutory waiver of this immunity. 28 U.S.C. §§ 1346, 2671–2680. It gives jurisdiction to the federal district courts to hear civil actions against the United States for money damages for injuries caused by the negligent or wrongful acts or omissions of government employees while acting within the scope of their employment, subject to several exceptions. One of these exceptions exempts "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty" from the application of the provisions of the FTCA. 28 U.S.C. § 2680(c). The assessment and collection exemption, as with all provisions of the FTCA, "must be strictly construed in favor of the sovereign." *Thigpen v. United States,* 800 F.2d 393, 394 (4th Cir.1986).

The opinions interpreting section 2680(c) clarify that the exemption applies not only to actions by persons against whom the tax collection efforts are directed, but also to actions by third parties injured by tax collec-

tion efforts. *Murray v. United States,* 686 F.2d 1320, 1324 (8th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Broadway Open Air Theatre v. United States,* 208 F.2d 257, 259 (4th Cir.1953). Thus, section 2680(c) bars Mrs. Perkins's action if her injuries were caused by Agent Smyth's tax collection efforts even though neither she nor her husband were the subject taxpayer.

The opinions decided under section 2680(c) also interpret the section to encompass a broad scope of activities by IRS agents. The Fifth Circuit has explained

Congress retained the United States' sovereign immunity for any claim *in respect of* the assessment or collection of taxes. This language is broad enough to encompass any activities of an IRS agent even *remotely related* to his or her official duties.

*Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir.1981) (second emphasis added). *See also Kosak v. United States,* 465 U.S. 848, 852–55, 104 S.Ct. 1519, 1522–24, 79 L.Ed.2d 860 (1984) (although this decision concerned damages caused by the negligent handling of property detained by a *customs* agent, its interpretation of section 2680(c) as broad-scoped applies with equal force in the taxation arena).

Mrs. Perkins offers various theories to establish that, despite the breadth of the exemption, Agent Smyth's actions did not fall within the protection of section 2680(c). First, she argues that, because IRS agents are not authorized to commit torts or to violate regulations, any torts or violations committed by Smyth during an assessment or collection effort cannot be considered to be within the scope of his official duties. She explains that Mr. Perkins's death was caused by Smyth's violations of numerous federal and state laws that were, by definition, outside the scope of his duties, and that the IRS should therefore not be immune from her suit.

Her argument lacks merit. "[T]his construction, which would render Section 2680(c) meaningless, has been consistently rejected." *Capozzoli,* 663 F.2d at 658 (citing *Broadway Open Air Theatre,* 208 F.2d at

259, and other cases). It is well established that regulatory violations and torts committed by agents are within the scope of the exception if they were committed during the course of a tax assessment or collection effort. In *Broadway Open Air Theatre*, this Court held that the IRS was immune from liability stemming from activities of its agents allegedly involving wrongful conversion of funds, so long as the activities were related to tax assessment and collection. 208 F.2d 257. Similarly, in *Murray v. United States*, where plaintiff alleged that the IRS had violated the Internal Revenue Code in not allowing him to redeem his property, the court nevertheless held that suit under the FTCA was barred by 2680(c). 686 F.2d 1320. Finally, in *Solus Ocean Systems, Inc. v. United States Customs Service*, suit was barred by section 2680(c) even though revenue agents sold the plaintiff's property without giving him prior notice as required by applicable customs laws and regulations. 777 F.2d 326 (5th Cir.1985). Accordingly, we hold that the fact that Smyth's activities may have violated various state and federal regulations does not mean that they were outside the scope of his official tax assessment and collection duties.

■ Mrs. Perkins next relies on several decisions for the proposition that FTCA exemptions do not immunize agencies when they have violated federal law, but they are easily distinguished. Each involved a situation in which an agency had violated a regulation mandating that a particular action be taken and then tried to claim that it was immunized by 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA.[3] *E.g., Berkovitz v. United States*, 486 U.S. 531, 541–44, 108 S.Ct. 1954, 1961–63, 100 L.Ed.2d 531 (1988) (discretionary function exemption did not immunize FDA for licensing a vaccine without first receiving the required safety data because FDA had no discretion to issue a license under such circumstances). Obviously, failure to perform a *mandatory* function is not a *discretionary* function. Thus, these cases involved the in-

quiry whether the action of the agency fell within an FTCA exception in the first place, not whether the implication of a federal regulation rendered an otherwise immune activity actionable. In contrast, with the assessment and collection exception, the existence of a regulation mandating a particular action does not alter the nature of the activity; it is either related to tax assessment and collection or it is not, regardless of the existence of the regulation. Thus, these decisions shed no light on the present case.

Mrs. Perkins then contends that to apply the exemption to bar her claim would be to hold that IRS agents are above the law and need not obey federal regulations. This does not follow. Federal regulations are indeed binding on the government and taxpayer alike. *Miller v. Commissioner of Internal Revenue*, 333 F.2d 400, 403 (8th Cir.1964); *Hugoton Prod. Co. v. United States*, 161 Ct.Cl. 274, 315 F.2d 868, 871 (1963). However, the issue in the present case is not whether Agent Smyth can be prosecuted for his violations or whether the IRS is bound to the terms of its regulations when seeking to enforce them against a taxpayer; rather, the issue is whether the exemption bars Mrs. Perkins from maintaining an action in tort against the IRS for Agent Smyth's actions. The fact that the government is bound by federal regulations in other contexts does not affect the application of the exemption to bar Mrs. Perkins's tort claims.

■ Despite the foregoing, the breadth of section 2680(c)'s operation is not unlimited. As the Fifth Circuit has explained,

> [w]e do not intend to suggest that the Government is insulated from tort liability for any and all transgressions committed by IRS employees. Section 2680(c) does not so state. Where an IRS employee commits a tort wholly unrelated to his or her official duties of assessing and collecting taxes, the sovereign immunity retained under 28 U.S.C. § 2680(c) would not apply.... [I]t is conceivable that an IRS

---

**3.** This exemption provides that no liability shall lie for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part

of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

agent could engage in tortious conduct sufficiently removed from the agent's official duties of assessing or collecting taxes as to be beyond the scope of Section 2680(c), and at the same time sufficiently within the scope of his employment as to give rise to an action against the United States.

*Capozzoli v. Tracey,* 663 F.2d at 658. This decision leaves a window open for a claimant to show that her claim falls within the FTCA but without the exception; that is, that an IRS agent harmed her by an act done within his scope of employment generally, but not within the narrower scope of his tax assessment and collection duties.

The burden is on a claimant to establish that an IRS agent's actions were within that window. Mrs. Perkins argues that she has met the burden. We hold that she has not. It is undisputed that Agent Smyth's actions fell within the scope of his official duties as an IRS officer sufficiently to be actionable under the FTCA. However, the parties dispute whether his actions fell within the scope of his tax assessment and collection duties sufficiently to be protected by the section 2680(c) exemption. We hold that they did.

■ Whether a case falls within the window is determined by whether a specific tax collection is at issue or whether the more general purposes of the agency are being pursued. In cases in which a specific tax debt of a specific taxpayer is at issue, the exemption immunizes the IRS from suit for activities that are even remotely related to the tax assessment or collection. For instance, in *Capozzoli,* an IRS agent was supposed to be inspecting a vacant lot to determine the extent of damage that was the basis of a casualty loss claim by a taxpayer, but was instead photographing the taxpayer's nearby residence while she was within it wearing only a nightgown. 663 F.2d 654. The court held that the photography was remotely but sufficiently related to the agent's assessment of her taxes to fall within the section 2680(c) exception, even though the casualty loss claim did not involve the residence and even if the photography constituted an unauthorized tortious invasion of privacy. *See also Murray,* 686 F.2d 1320; *Broadway Open Air Theatre,* 208 F.2d 257.

In contrast, where a specific tax assessment or collection effort is not served by the agent's activities, section 2680(c) may not immunize the IRS. For instance, in *Johnson v. Sawyer,* an IRS agent issued a press release in violation of the terms of a plea agreement and of a statute prohibiting disclosure of tax return information. 980 F.2d 1490 (5th Cir.1992), *amended on other grounds,* 4 F.3d 369 (5th Cir.1993). Johnson, who had entered a guilty plea to tax evasion in exchange for restrictions on public disclosure of his tax information, filed suit under the FTCA. The United States moved to dismiss, claiming immunity under the assessment and collection exception.

The court rejected the sovereign immunity argument, finding that the press release served the purpose of deterrence of tax evaders generally, thereby furthering only the general efforts of the IRS to collect taxes, and that it was not sufficiently related to the specific assessment and collection of Johnson's tax debt to invoke the protection of section 2680(c). The court declined to "extend the exception to the point that the FTCA's waiver of sovereign immunity vis-a-vis the IRS would be wholly subsumed in" the exception, explaining that

accepting the government's argument [that its actions were protected by the exemption] would stretch the assessment and collection exemption to cover all general deterrent activities of the IRS even though, as here, the taxpayer may have long since paid the tax deficiencies as well as penalties and interest.

*Id.,* 980 F.2d at 1503–04. *See also Wilkerson v. United States,* 839 F.Supp. 440, 446 (E.D.Tex.1993) (disclosures made by IRS to third parties "made solely to harass [plaintiff] or ruin her business and with no intent to collect taxes" would fall outside assessment and collection duties of IRS and be actionable).

The rule therefore emerges that the exemption applies to protect illegal acts or torts committed by IRS agents only when they are related, however remotely, to a *bona fide* effort to assess or collect a particular tax debt. The governing inquiry is not how egregious the agent's actions were, but whether the actions were related to a partic-

ular tax assessment or collection effort or merely served the general purposes of the IRS (or no legitimate purpose at all). In the present case, Agent Smyth's actions, wrongful or not, were all related to a specific tax collection effort, namely the seizure of Marcus Coal's mining equipment for sale to satisfy Marcus Coal's tax debt. Thus, they fall into the category of activities immunized because they are sufficiently related to an assessment or collection effort.

■ Mrs. Perkins next raises the procedural argument that the dismissal was improper because it was granted before discovery was complete. She claims that, even if the known violations are within the scope of Smyth's tax collection duties, she might have been able to discover other violations that were outside that scope. As the district court explained, however, further discovery could not have helped Mrs. Perkins because, even assuming that all of her allegations were taken as true and that she would be able to discover evidence to support them, the result would be the same: the United States would be immune from suit because any other violations that might be discovered would nevertheless relate to Smyth's tax collection effort.

■ Finally, Mrs. Perkins argues for an implied waiver of immunity in light of what she characterizes as especially egregious and willful violations of the law. Her argument has no legal basis. This Court has stated, "One only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, *however negligently caused*, that affected the governmental functions." *Broadway Open Air Theatre*, 208 F.2d at 259 (emphasis added) (quoting *Dalehite v. United States*, 346 U.S. 15, 32, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953)). Moreover, waiver of sovereign immunity must generally be express, not implied, especially in the face of a specific statutory retention of immunity in an area. *United States v. John Hancock Mutual Life Ins. Co.*, 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960). There is no basis for an implied waiver of immunity in this case.

Mrs. Perkins raises several additional theories to justify not applying the exception to bar her claim, including (1) that Smyth was conducting a criminal investigation rather than collecting taxes; (2) that the employer/employee relationship between Smyth and Mr. Perkins should preclude the application of the exemption; and (3) that Smyth's actions were "pre-collection" or "mining" activities rather than tax collection activities. We do not address them here except to indicate that our review of the record, briefs, and oral argument convinces us that each theory lacks merit and has no basis in law.

For the foregoing reasons, we affirm the dismissal of Mrs. Perkins's wrongful death action and the denial of her motion for reconsideration on the grounds that Agent Smyth's activities fall within the protection of section 2680(c).

### III

We next consider Mrs. Perkins's challenge to the district court's denial of her motion for leave to amend her complaint to add three new counts: negligent supervision and loss of parental and spousal consortium. The court denied the motion on the grounds that it would still be compelled to dismiss the action even if the allegations of the proposed amended complaint and supporting affidavit[4] were all taken as true. We affirm, concluding that the district court did not abuse its discretion in denying the motion. We will discuss the proposed counts briefly.

■ An allegation of "negligent supervision" will not render an otherwise unactionable claim actionable so long as the negligent supervision claim depends on activity of the supervised agent which is itself immune. *Thigpen*, 800 F.2d at 395 ("Section 2680(h) [the assault and battery exemption] ... bars FTCA claims that allege the negligence of supervisors but depend upon the existence of an assault or battery by a government employee."). In the present case, if the United States is immune from suit for Agent Smyth's activities, it is also immune from suit

---

4. William Jenkins is a retired IRS officer. His affidavit attempts to characterize Smyth's activities as unauthorized violations of law. J.A. 239–46. As discussed above, whether Smyth's activi- ties violated IRS regulations does not affect whether they are related to tax assessment and collection.

for his negligent supervision because, without his underlying activities and violations, there would be no cause of action for negligent supervision at all. Because the United States would still be immune and the suit properly dismissed even if the new claim were taken as true, the district court did not abuse its discretion in denying the motion to amend.

Mrs. Perkins contends that the district court and the United States have mischaracterized her claim as one for "negligent supervision." She claims that her claim was actually one for "negligent retention" and that such a claim would be actionable because personnel decisions regarding whether to retain employees are administrative and unrelated to tax assessment and collection. She claims that the IRS knew that Agent Smyth allegedly suffered from mental infirmities and a tendency to poor judgment and was therefore negligent in retaining him. However, the rule regarding negligent supervision claims discussed above applies equally to negligent *retention* claims. *Hughes v. Sullivan,* 514 F.Supp. 667, 670 (E.D.Va.1980) (although complaint alleged that the United States negligently retained postman despite knowledge of his bad propensities, where *proximate* cause of injury was not the negligent retention of him but the willful and intentional act of the postman, FTCA immunity exception which applied to the postman's acts applied as well to bar the negligent retention claim), *aff'd sub nom. Hughes v. United States,* 662 F.2d 219 (4th Cir.1981) (per curiam). Similarly, in the present case, the proximate cause of Mr. Perkins's death was allegedly the violation of various regulations by Agent Smyth, not his retention by Smyth's employer. Thus, the addition of a negligent retention claim would be futile because the case would still fail to survive a motion to dismiss.

The claims for loss of spousal and parental consortium, even if true, would likewise fail to withstand a motion to dismiss for several reasons. First, any loss of consortium claim in this case would still be a tort claim arising out of Agent Smyth's tax collection activities and therefore be barred by the section 2680(c) exemption. Second, we doubt that there can be a separate cause of action for loss of consortium in a wrongful death action under West Virginia law, as loss of consortium is treated as a part of the damages awarded in a wrongful death action. *Belcher v. Goins,* 184 W.Va. 395, 400 S.E.2d 830, 834 & n. 4 (1990). Third, even if Mrs. Perkins could state a cause of action for loss of spousal and parental consortium independent of the wrongful death claim, this Court would have no jurisdiction to hear the case because she failed to first submit those claims as administrative claims and exhaust her administrative remedies. *McNeil v. United States,* 113 S.Ct. 1980, 1984 (1993), *Plyler v. United States,* 900 F.2d 41 (4th Cir.1990). Accordingly, the proposed consortium counts would also be properly dismissed.

In sum, the district court was justified in denying Mrs. Perkins's motion to amend her complaint because the proposed amendments could not withstand a motion to dismiss. *Glick v. Koenig,* 766 F.2d 265, 268–69 (7th Cir.1985) (if amended complaint could not withstand motion to dismiss, motion to amend should be denied as futile); 6 Charles A. Wright et al., Federal Practice and Procedure § 1487, at 643 & n. 26 (1990).

*AFFIRMED.*