Charles E. HURT, et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

Charles E. HURT, et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

Civil Action Nos. 2:95–0075, 2:95–1053.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 14, 1996.

---

Charles E. Hurt, Charleston, WV, pro se.

Gerald A. Role, U.S. Dept. of Justice, Washington, DC, Rebecca A. Betts, U.S. Attorney, Stephen M. Horn, Assistant U.S. Attorney, Southern District of W.Va., Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendants' motion to dismiss, or in the alternative for summary judgment, in Civil Action 2:95–1053; and (2) Defendants' motion to dismiss in Civil Action 2:95–0075. For the reasons detailed below, the Court **GRANTS** in part and **DENIES** in part Defendants' motions.

### I. INTRODUCTION

On February 1, 1995 Plaintiffs commenced Civil Action 2:95–0075 against the United States and the Commissioner of Internal Revenue seeking injunctive relief and monetary damages. Plaintiffs alleged the Commissioner engaged in a pattern of harassment against them in retaliation for Mr. Hurt's legal representation of clients in civil actions filed against the IRS in 1973. Plaintiffs contended the IRS audited their tax returns each year from 1973 to present and asserted also the IRS illegally applied a payment made by them to their tax debt owed for tax year 1986 rather than 1993, even though their tax debt for 1986 had been satisfied.[1]

---

1. The United States concedes Plaintiffs satisfied any amounts due on their 1986 return and that it erred in applying the amount to Plaintiffs' 1986 return. In addition to the instant litigation, there is also a substantial history surrounding the saga of Plaintiffs' 1986 return. *See Hurt v. United States of America,* Nos. 95–1065, 95–1029, 1995 WL 703540 (4th Cir. Nov. 30, 1995). In sum, the IRS and Plaintiffs agreed to a stipulated decision in the United States Tax Court settling a deficiency and associated penalties assessed against Plaintiffs by the IRS. Following resolution of the matter, the IRS assessed and attempted to collect $17,241.19 in interest on the amounts set forth in the Stipulated Decision. The Hurts paid the interest as assessed and filed a refund action in this Court to recover the $17,241.19, alleging all amounts owed to the IRS, including interest, were resolved by the stipulated decision. The Court's grant of sum-

The United States moved to dismiss in April 1995. In a June 21, 1995 Memorandum Opinion, this Court held, *inter alia,* (1) Plaintiffs could not seek injunctive relief; (2) Plaintiffs could not maintain an action under the Federal Tort Claims Act (FTCA), given their failure to first file an administrative claim; but (3) Plaintiffs could assert a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), given their allegations of "a pattern of retaliatory and harassing auditing and crediting practices used by the IRS against them." *Hurt v. United States,* 889 F.Supp. 248, 252 (S.D.W.Va.1995).

Then on September 12, 1995 the United States moved for summary judgment. This motion engendered a flurry of briefing and miscellaneous motions. To illustrate: Plaintiffs filed several motions seeking to amend their complaint to state an FTCA claim following the IRS' denial of Plaintiffs' administrative claim on October 23, 1995. The Court declined to rule on the United States' summary judgment motion given the seemingly meritorious motions to amend. Also, in an abundance of caution, the Court did not permit Plaintiffs to amend their complaint to add an FTCA claim, given the suggestion in *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) that FTCA plaintiffs may not exhaust their administrative remedies during the pendency of their lawsuit challenging the tortious conduct. *Id.* at 112–13, 113 S.Ct. at 1984.

In an attempt to sort the tangle, the Court entered a Case Management Order (CMO) on November 20, 1995 designed to achieve a fair and orderly disposition in one proceeding of all claims Plaintiffs might have against the United States and its agents. The CMO permitted Plaintiffs (1) to amend their complaint in Civil Action 2:95–0075 to clarify their causes of action under *Bivens* and 26 U.S.C. § 7433; and (2) to file no later than December 10, 1995 a separate civil action asserting an FTCA claim. The Court further observed that, after Defendants filed their responsive pleadings in the two cases, the actions would be consolidated pursuant to Rule 42(a), Federal Rules of Civil Procedure.

Plaintiffs filed their amended complaint in Civil Action 2:95–0075 on November 24, 1995 and their FTCA claim, Civil Action 2:95–1053, on November 29, 1995. The United States immediately responded with the instant dispositive motions.

Defendants assert the FTCA claim is barred because (1) it falls within the confines of 28 U.S.C. § 2680(c), the tax collection exception to the FTCA; (2) Plaintiffs failed to file a proper FTCA claim; and (3) Plaintiffs' claim is untimely under the FTCA's limitations period. As to the *Bivens* and § 7433 claims, Defendants argue (1) Plaintiffs cannot assert all claims against all named Defendants; (2) Plaintiffs fail to state a *Bivens* claim against the Commissioner of Internal Revenue and the District Director; (3) all individually named Defendants are entitled to qualified immunity; (4) the *Bivens* claim is untimely; and (5) the Court lacks jurisdiction over the § 7433 claim, which is alleged to be untimely as well.

Initially, the Court determines these two actions contain common questions of law and fact. Accordingly, pursuant to Rule 42(a), the Court **ORDERS** Civil Actions 2:95–0075 and 2:95–1053 consolidated for all further proceedings. Civil Action 2:95–0075 is designated as the lead case.

## II. LAW AND ANALYSIS

### A. Is Plaintiffs' FTCA Claim Barred by § 2680(c):

■ Defendants assert the Court lacks jurisdiction over Plaintiffs' FTCA claim because the United States has not waived sovereign immunity. Defendants specifically claim 28 U.S.C. § 2680(c) prevents the FTCA action.

Section 2680(c) provides, in pertinent part, as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

mary judgment in favor of Plaintiffs was subsequently affirmed by the Court of Appeals.

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty....

*Id.* Defendants rely heavily on the recent decision of the United States Court of Appeals for the Fourth Circuit in *Perkins v. United States,* 55 F.3d 910 (4th Cir.1995). In *Perkins,* the Court of Appeals restated some well-settled principles governing FTCA claims:

As sovereign, the United States enjoys immunity from suits for damages at common law. The FTCA is a limited statutory waiver of this immunity. It gives jurisdiction to the federal district courts to hear civil actions against the United States for money damages for injuries caused by the negligent or wrongful acts or omissions of government employees while acting within the scope of their employment, subject to several exceptions. One of these exceptions exempts '[a]ny claim arising in respect of the assessment or collection of any tax or customs duty' from the application of the provisions of the FTCA. The assessment and collection exemption, as with all provisions of the FTCA, 'must be strictly construed in favor of the sovereign.'

*Perkins,* 55 F.3d at 913 (citations omitted).

In *Perkins,* the Court first discussed the general contours of § 2680(c):

The opinions decided under section 2680(c) also interpret the section to encompass a broad scope of activities by IRS agents. The Fifth Circuit has explained

Congress retained the United States' sovereign immunity for any claim *in respect of* the assessment or collection of taxes. This language is broad enough to encompass any activities of an IRS agent even *remotely related* to his or her official duties.

*Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir.1981) (second emphasis added). *See also Kosak v. United States,* 465 U.S. 848, 852–55, 104 S.Ct. 1519, 1522–24, 79 L.Ed.2d 860 (1984)....

It is well established that regulatory violations and torts committed by agents are within the scope of the exception *if they were committed during the course of a tax assessment or collection effort.*...

*Perkins,* 55 F.3d at 913–14 (final emphasis added).

Despite this broad interpretation, however, the Court of Appeals nevertheless observed the "breadth of section 2680(c)'s operation is not unlimited." *Id.* at 914. The court's observations are worth quoting at length:

[*Capozzoli* ] leaves a window open for a claimant to show that her claim falls within the FTCA but without the exception; that is, that an IRS agent harmed her by an act done within his scope of employment generally, but not within the narrower scope of his tax assessment and collection duties.

The burden is on a claimant to establish that an IRS agent's actions were within that window....

Whether a case falls within the window is determined by whether a specific tax collection is at issue or whether the more general purposes of the agency are being pursued. In cases in which a specific tax debt of a specific taxpayer is at issue, the exemption immunizes the IRS from suit for activities that are even remotely related to the tax assessment or collection....

The rule therefore emerges that the exemption applies to protect illegal acts or torts committed by IRS agents only when they are related, however remotely, *to a bona fide effort to assess or collect a particular tax debt.* The governing inquiry is not how egregious the agent's actions were, but whether the actions were related to a particular tax assessment or collection effort or merely served the general purposes of the IRS (or no legitimate purpose at all). In the present case, Agent Smyth's actions, wrongful or not, were all related to a specific tax collection effort, namely the seizure of Marcus Coal's tax debt. Thus, they fall into the category of activities immunized because they are sufficiently related to an assessment or collection effort.

*Perkins,* 55 F.3d at 915–16.

Defendants proffer an impressive list of authorities and ultimately assert even if Plaintiffs' returns were audited every year since 1973, such examinations are permitted

under the Internal Revenue Code. The Court does not disagree. What Defendants (perhaps intentionally) fail to comprehend, however, is Plaintiffs are not challenging a specific tax assessment or collection, but rather the Defendants' motivations for engaging in the assessment or collection actions in the first place. In other words, Plaintiffs challenge the bona fides of the Defendants' assessment and collection activities and whether they served any legitimate purpose. Under *Perkins,* this is sufficient to sidestep § 2680(c).

### B. The Propriety of Plaintiffs' Administrative Claim:

■ Defendants first assert Plaintiff Carolyn Hurt's FTCA claim must be dismissed because she failed to file an administrative claim with the IRS. Defendants are correct. *See, e.g., Muth v. United States,* 1 F.3d 246, 249 (4th Cir.1993) (stating "if there are multiple claimants in the matter, each claimant must 'individually satisfy the jurisdictional prerequisite of filing a proper claim, unless another is legally entitled to assert such a claim on their behalf.' ") (quoting *Frantz v. United States,* 791 F.Supp. 445, 447 (D.Del. 1992)). Accordingly, Carolyn Hurt's FTCA claim must be dismissed without prejudice.

■ Defendants next assert Charles Hurt's FTCA action is also subject to dismissal because his administrative claim failed to set forth a sum certain in money damages he sought to recover from the IRS. Defendants have not provided the Court with all of the correspondence relating to Mr. Hurt's claim. Fortunately, Mr. Hurt has done so. It is true Mr. Hurt did not mention a sum certain in his original June 23, 1995 administrative claim letter to the IRS. Mr. Hurt supplemented this letter on September 28, 1995, however, with a form provided him by the IRS. He stated on the form that the amount of his claim was $20,000. Accordingly, Defendants argument lacks merit.

Defendants also assert Mr. Hurt's administrative claim was not filed timely. The Court addresses this argument and the Defendants' statute of limitations defense on the § 7433 claim in section II.F *infra.*

### C. The Proper Parties for Plaintiffs' Bivens and § 7433 Claims:

Defendants next assert the United States is not a proper party defendant for a *Bivens* action. Given the Court's conclusion in section II.D that Defendants are entitled to qualified immunity on Plaintiffs' *Bivens* claim, this argument need not be addressed.

■ The individual Defendants further assert they are not amenable to action on Plaintiffs' § 7433 claim. Defendants are correct. Section 7433 clearly provides only for an action against the United States. Section 7433(a) states "such taxpayer may bring a civil action for damages *against the United States.*" *Id.* (emphasis added).

### D. Qualified Immunity:

■ As discussed *supra,* the Court previously ruled in the June 21 Memorandum Opinion Plaintiffs stated a *Bivens* claim against the individual Defendants, given the allegation of "a pattern of retaliatory and harassing auditing and crediting practices used by the IRS against them." *Hurt,* 889 F.Supp. at 252. The individually named Defendants assert, however, they are entitled to qualified immunity on Plaintiffs' *Bivens* claim.

Defendants essentially contend they could not have violated clearly established law in repeatedly auditing Plaintiffs' returns because the IRS possesses broad authority to conduct yearly examinations of taxpayers and enforce internal revenue laws. In sum, Defendants assert "[t]here is no constitutional right *not* to be audited." Mem. in Supp. at 9. The Court does not disagree, but Defendants well-know Plaintiffs are not claiming immunity to audits or examinations. Nevertheless, although Defendants misconceive the true nature of Plaintiffs' claims, the Court must conclude Plaintiffs' constitutional claims are not clearly established in law.

■ Qualified immunity is designed "to limit the deleterious effects that the risks of civil liability would otherwise have on the operations of government." *Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.1995) (en banc), *cert. denied,* — U.S. ——, 116 S.Ct.

530, 133 L.Ed.2d 436 (1995); *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Akers v. Caperton*, 998 F.2d 220, 225–26 (4th Cir.1993). The doctrine protects " 'all but the plainly incompetent or those who knowingly violate the law. . . .' " *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir.1992) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). As stated in *Pinder*, the defense "prevents officials from being blindsided by liability derived from newly invented rights or new, *unforeseen* applications of pre-existing rights. In short, officials cannot be held to have violated rights of which they could not have known." *Pinder*, 54 F.3d at 1173 (emphasis added); *see also Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

■■■ As a matter of timing, and in part to achieve the goal of not subjecting public officials to the burdens attendant in civil litigation unnecessarily, the question of qualified immunity should be decided *"as a threshold matter"* in the litigation. *See, e.g., Torcasio v. Murray*, 57 F.3d 1340, 1352 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996) (emphasis in original). The general contours of the defense are well-defined. In a nutshell, "[e]ven officials who violate the Constitution are to be accorded qualified immunity and so escape liability for money damages if, in the performance of discretionary duties, 'their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.' " *Buonocore v. Harris*, 65 F.3d 347, 353 (4th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see also Torcasio*, 57 F.3d at 1343; *Pinder*, 54 F.3d at 1173; *DiMeglio v. Haines*, 45 F.3d 790, 794 (4th Cir.1995). This inquiry resolves itself into two distinct analytical steps.

■■■ First, the Court must decide the purely legal question of whether the challenged actions violated clearly established law. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *DiMeglio*, 45 F.3d at 794. In making this determination, the Court focuses on the law as it existed at the time of the alleged

violation, *see, e.g., Buonocore*, 65 F.3d at 353; *Torcasio*, 57 F.3d at 1343, and "examines the facts alleged *by the plaintiff*, not those asserted by the defendant." *Buonocore*, 65 F.3d at 357 (emphasis in original); *DiMeglio*, 45 F.3d at 794, 803. Second, the Court must determine "whether a reasonable person in the official's position would have known that his conduct would violate" Plaintiff's rights. *Torcasio*, 57 F.3d at 1343; *Pinder*, 54 F.3d at 1169.

■■■ Perhaps the most difficult task in ruling on the question of qualified immunity, however, involves the prelude to these two analytical steps: The Court must identify the " 'specific right allegedly violated.' " *Buonocore*, 65 F.3d at 353 (quoting *Pritchett*, 973 F.2d at 312); *Torcasio*, 57 F.3d at 1343. In making this determination, " ' "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." ' " *DiMeglio*, 45 F.3d at 803 (quoting *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir.1994) (Powell, J.)) (quoting *Pritchett*, 973 F.2d at 312). In other words, the specific right asserted must have been "clearly established *in a particularized and relevant sense.*" *Pinder*, 54 F.3d at 1173 (emphasis added); *see DiMeglio*, 45 F.3d at 804.

■■■ Nevertheless, "it is important not to be overspecific—there need not be a prior case directly on all fours with the facts presented to the official—but 'in light of the pre-existing law the unlawfulness' of [a defendant's] conduct must have been 'apparent.' " *Id.* at 1173 (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039); *see DiMeglio*, 45 F.3d at 804.

Plaintiffs allege Defendants have harassed them through repeated audits in violation of their Fourth and Fifth Amendment rights. Several courts have recognized, or at least intimated, the propriety of constitutional claims to redress retaliatory, harassing and otherwise inappropriate actions by the IRS. *Laing v. United States*, 423 U.S. 161, 209–10 n. 14, 96 S.Ct. 473, 497–98 n. 14, 46 L.Ed.2d 416 (1976) (Blackmun, J. dissenting along with Burger, C.J. and Rehnquist, J.) (dicta) (citing *Bivens* and stating "abuse [in tax

collection] is subject to rectification otherwise, and the Congress and the courts surely will not be unsympathetic."); *National Commodity & Barter Ass'n v. Archer,* 31 F.3d 1521, 1527 (10th Cir.1994); *National Commodity & Barter Ass'n, National Commodity Exchange v. Gibbs,* 886 F.2d 1240, 1248 (10th Cir.1989); *Pleasant v. Lovell,* 876 F.2d 787 (10th Cir.1989); *Rutherford v. United States,* 702 F.2d 580 (5th Cir.1983) (intimating Fifth Amendment *Bivens* action may be available against IRS agent); *Wilkerson v. United States,* 839 F.Supp. 440, 446 (E.D.Tex.1993) (stating "[b]ecause Wilkerson's complaint ... can be read as alleging harassment by the IRS which lead to loss of her business" her Fifth Amendment claims would not be dismissed).[2]

Nevertheless, the issue is at the very least "debatable" in the Fourth and Fifth amendment contexts, see *Myers v. United States,* 883 F.Supp. 526, 532 (D.Or.1995), and even some of the decisions in Plaintiffs' favor are a mixed-bag or have been limited by subsequent precedent.[3] *See also, e.g., Vennes v. An Unknown Number of Unidentified Agents of the United States,* 26 F.3d 1448, 1453 (8th Cir.1994) (plaintiff alleging *Bivens* claim against IRS agents for violations of Fourth, Fifth, Sixth and Eighth Amendments and the court stating "Since [1988], at least three circuits have upheld the dismissal of *Bivens* actions against IRS agents for tax assessment and collection activities. We agree with those decisions."), *cert. denied,* —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) (citations omitted).

Given the brevity of Plaintiffs' complaint, the Court is hard-pressed to identify what components of the Fourth and Fifth Amendments allegedly were violated by Defendants' conduct. For instance, the Court is left to speculate what unlawful search or seizure Defendants engaged in or what component of the due process clause was violated. Irrespective of this pleading defect, the contours of and basis for the *Bivens* claim alleged by Plaintiffs against these IRS officials was vague and amorphous when the bulk of the audits and examinations undertaken by De-

---

**2.** While there is little Fourth Circuit precedent on this issue, the Court has located two decisions of some consequence. First, in *White v. Boyle,* 538 F.2d 1077 (4th Cir.1976), plaintiff sued the district director and various agents of the IRS. Plaintiff asserted his outspoken opposition to the tax system caused the IRS to designate him a "sensitive" and "high deterrent" case who should be subject to retaliatory and harassing investigatory procedures. *Id.* at 1078. The court suggested that if plaintiff could demonstrate an injury flowing from a violation of his constitutionally protected rights, he could recover under *Bivens. White,* 538 F.2d at 1079. Nevertheless, the court concluded summary judgment for defendants was appropriate because plaintiff did not demonstrate any constitutional violation. *Id.* While there is thus a suggestion in *White* that a *Bivens* remedy might be available to an aggrieved taxpayer under some circumstances, commentators interpreting *White* have characterized that suggestion as nothing more than dicta. Joan Steinman, *Backing Off Bivens and the Ramifications of this Retreat for the Vindication of First Amendment Rights,* 83 Mich.L.R. 269, 335 n. 346 (1984).

The second decision, *Ross v. Meese,* 818 F.2d 1132 (4th Cir.1987), involved a plaintiff pursuing a *Bivens* claim for declaratory relief against the Attorney General of the United States, the Director of the FBI, the Acting Director of the DEA and the Commissioner of the IRS, to name a few. The gist of plaintiff's allegations, however,

seemed directed toward FBI agents who conducted an extensive and intrusive search of her home, removing certain personal articles in the process. The Court of Appeals concluded plaintiff had alleged a cognizable violation of her constitutional rights. *Ross,* 818 F.2d at 1134. Unfortunately for Plaintiffs, reliance on *Ross* to deny qualified immunity here would be improper. The factual dissimilarity between *Ross* and the instant case is so great that this Court's reliance on *Ross* for purposes of the clearly established law inquiry would amount to an unforeseen application of preexisting rights. *Pinder,* 54 F.3d at 1173.

**3.** For instance, while the court in *Rutherford* surmised a Fifth Amendment claim might be available to an aggrieved taxpayer, it later revisited *Rutherford* in *Morales v. Haynes,* 890 F.2d 708, 710 (5th Cir.1989) and stated as follows:

[In *Rutherford,*] we remanded the case for a determination of whether the agent's particularly egregious and offensive conduct might have deprived the plaintiffs of a "liberty" interest and, *if so, whether* that interest, once identified, was so "clearly established" as to deprive the defendant of his qualified immunity. We did not hold that the alleged conduct violated a protected 'liberty' interest, and we certainly did not hold that the defendant lost his qualified immunity by violating a 'clearly established' constitutional right.

*Id.* (emphasis in original)

fendants occurred in the 1970s and 1980s, and to some extent remains so today.

Accordingly, while Defendants' repeated audits and other activity against Plaintiffs states a viable *Bivens* claim, the claim was not clearly established in law during the relevant time periods.[4] *See Price v. Sasser,* 65 F.3d 342, 346 (4th Cir.1995) (stating "'although public officials may be "charged with knowledge of constitutional developments, [they] are not required to predict the future course of constitutional law." "A reasonable government official cannot necessarily be expected to recognize the significance of a few scattered cases from disparate areas of the law....""') (citations and quoted authorities omitted).

Accordingly, the Court GRANTS Defendants' motion to dismiss the *Bivens* claim on qualified immunity grounds.

### E. Exhaustion of Administrative Remedies Pursuant to 26 U.S.C. § 7433:

■■■ Defendants next assert Plaintiffs failed to exhaust their administrative remedies before bringing suit under § 7433. Section 7433(d)(1) provides as follows:

A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

*Id.* The applicable IRS regulation for exhaustion of administrative remedies is found in 26 C.F.R. § 301.7433–1(e) (1995) which states as follows:

(e) *Procedures for an administrative claim—*(1) *Manner.* An administrative claim ... shall be sent in writing to the district director (marked for the attention of the Chief, Special Procedures Function) of the district in which the taxpayer currently resides.

(2) *Form.* The administrative claim shall include:

(i) The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;

(ii) The grounds, in reasonable detail, for the claim (include copies of any available substantiating documentation or correspondence with the Internal Revenue Service);

(iii) A description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence);

(iv) The dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable (include copies of any available substantiation documentation or evidence); and

(v) The signature of the taxpayer or duly authorized representative.

*Id.*

Defendants correctly assert Carolyn Hurt failed to file an appropriate administrative

---

**4.** One recent law review article decrying the lack of potential remedies for taxpayers damaged by unlawful IRS conduct even admits *"Bivens* tort actions have achieved limited success against the IRS making it difficult for a claimant to recover for constitutional violations." James T. Towe, *Is the IRS Above the Law? Potential Remedies for Taxpayers Damaged by Unlawful IRS Conduct,* 55 Mont.L.Rev. 469, 498 (1994). The law appears to have been even less favorable to Plaintiffs if viewed, as some might argue is appropriate, when the alleged harassment began in the 1970s and 1980s. *Id.* at 498–99 n. 205 (stating former IRS Commissioner Gibbs, while testifying before Congress, observed "that between 1980 and 1986, over 1,000 *Bivens* suits were filed [against IRS agents], but none were successful.")

This seeming indifference to taxpayer claims is quite troubling. This Court echoes the sentiment of Judge John A. MacKenzie in a 1973 unpub-

lished memorandum decision, on an unrelated area of the law, which eventually made its way to the Court of Appeals in *Portis v. United States,* 483 F.2d 670, 671 n. 3 (4th Cir.1973), *overruled, Nasim v. Warden, Maryland House of Correction,* 64 F.3d 951 (4th Cir.1995) (en banc). As stated by Judge MacKenzie:

While [I] have thus made the decision which [I] believe the state of present law requires under the facts of this case ... [I am] frank to say [I am] not satisfied with the recorded decisions and would welcome change.

. . . .

The problem is a knotty one, not here really solved, but [I] would welcome the intelligence of the appellate Court.

*Id.* (quoting Judge MacKenzie's opinion in the district court and characterizing such as displaying "modesty and a fine sense of justice").

claim, and thus her § 7433 claim, the only remaining claim alleged by her, is dismissed without prejudice. The assertion Charles Hurt failed to exhaust his administrative remedies, however, borders on frivolity.

It is abundantly clear Mr. Hurt more than substantially complied with the regulations when he filed his June 23 and September 28, 1995 FTCA administrative claims with the IRS. Even assuming some unidentified minor defect in his administrative claim, requiring Mr. Hurt to again pursue administrative remedies would amount to nothing more than futile *re-exhaustion.* Accordingly, the Court determines Mr. Hurt has exhausted the administrative remedies available to him within the IRS for purposes of § 7433.

### F. Statutes of Limitation:

■ Defendants next assert Mr. Hurt's claims are outside the statutes of limitation for the FTCA and § 7433. Defendants assert the putative harassment of Mr. Hurt has occurred since 1973. Consequently, Defendants argue Mr. Hurt should have known well before June 23, 1993 (two years preceding his administrative claim) he was a target of harassment and sought appropriate redress for the alleged injury at that time. Mr. Hurt asserts "[s]uch a contention obviously ignores the fact that the complaint . . . is of a continuous course of harassment that did, in fact, begin twenty (20) years ago but continues until this date. . . ." Pls.' Resp. at 4. While he cites no supporting authority, Mr. Hurt apparently seeks application of a continuing tort exception to the statute of limitations.

■ The FTCA limitations period is prescribed by 28 U.S.C. § 2401(b) which provides, in pertinent part, as follows:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal

Agency within two years after such claim accrues. . . .

*Id.* The statute bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency within two years after the claim accrues. *Henderson v. United States,* 785 F.2d 121, 123 n. 7 (4th Cir.1986). A claim accrues under the FTCA "when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Muth v. United States,* 804 F.Supp. 838, 843 (S.D.W.Va.1992) (Haden, C.J.), *aff'd,* 1 F.3d 246 (4th Cir.1993) (quoting *Gould v. Dep't of Health & Human Servs.,* 905 F.2d 738, 742 (4th Cir.1990)) (footnote omitted); *United States v. Kubrick,* 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979); *Kerstetter v. United States,* 57 F.3d 362, 364 (4th Cir.1995); *Miller v. United States,* 932 F.2d 301, 303 (4th Cir.1991); *Otto v. National Institute of Health,* 815 F.2d 985, 988 (4th Cir.1987); *Gilbert v. United States,* 720 F.2d 372, 374 (4th Cir.1983).

While there is authority to the contrary, several courts have concluded § 2401(b) may be tolled in instances where the United States engages in continuing tortious conduct. *See, e.g., Wehrman v. United States,* 830 F.2d 1480, 1486 (8th Cir.1987); *Page v. United States,* 729 F.2d 818, 821–22 (D.C.Cir. 1984) (stating "It is well-settled that '[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases.' Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it seems proper to regard the cumulative effect of the conduct as actionable."); *Gross v. United States,* 676 F.2d 295, 300 (8th Cir.1982) (stating "Where the tortious conduct is of a continuing nature, the *Kubrick* rule does not apply. Under the circumstances of this case, the focus should be on when the last tortious act occurred.").[5]

---

5. The Court has not located Fourth Circuit precedent sanctioning the continuing tort doctrine in the context of an FTCA action. While the Court of Appeals was squarely confronted with the issue in *Muth v. United States,* 1 F.3d 246 (4th Cir.1993), it declined to address the argument because it was raised for the first time on appeal. *Id.* at 250. Nevertheless, the court did

not indicate application of the doctrine was inappropriate. Further, the Fourth Circuit has exhibited a willingness to utilize doctrines related to the continuing tort theory.

For instance, in *Otto v. National Institute of Health,* 815 F.2d 985 (4th Cir.1987), the Court of Appeals adopted the continuous treatment doc-

 Mr. Hurt alleges a continuing pattern of tortious harassment over the course of many years that has not abated to this day.. His reliance on the continuing tort exception is particularly apropos because each individual audit and retaliatory action taken in isolation cannot " 'fairly or realistically be identified as the cause of significant harm[.]' " *Page*, 729 F.2d at 822. Rather, it is the "cumulative effect" of this harassment that is significant for litigation purposes. *Id.* The Court thus concludes Mr. Hurt is entitled to rely upon the continuing tort exception to § 2401(b). Accordingly, his claim has not yet accrued under, much less been extinguished by, § 2401(b). Defendants' argument to the contrary is without merit.[6]

### III. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Defendants' motion to dismiss all claims asserted by Carolyn Hurt and the *Bivens* claim asserted by Charles Hurt. The Court **DENIES** Defendants' motions on the remaining grounds. The case will proceed on Mr. Hurt's FTCA and § 7433 claims according to the Scheduling Order entered today.[7]

---

trine, which provides that where there has been a continuous course of medical treatment, a claim may not accrue until the end of that course of treatment if the treatment has been for the same illness or injury out of which the claim for medical malpractice arose. *Id.* at 988; *Miller v. United States*, 932 F.2d 301, 304 (4th Cir.1991) (stating "We are among the courts that have recognized and applied this theory, though it effectively trumps a rigid application of *Kubrick*'s first discovery rule."); *see also Tolliver v. United States*, 831 F.Supp. 558, 560 (S.D.W.Va. 1993) (characterizing the theory as "[a]n escape hatch from rigorous application of the *Kubrick* rule").

**6.** The same is true under the limitations provision for § 7433. Section 7433(d)(3) provides as follows:

> Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought ... only within 2 years after the date the right of action accrues.

*Id.* Congress clearly intended a portion of the substantive law surrounding § 2401(b) to be used in the interpretation and application of § 7433(d)(3). *See, e.g.,* H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 228 n. 1 (1988), *reprinted*

The Clerk is directed to send a copy of this Order to counsel of record.

---

*in* 1988 U.S.C.C.A.N. 5048, 5288 n. 1. (stating "The conferees intend that the general accrual rule applied under the Federal Tort Claims Act (28 U.S.C. sec. 2401(b)) be applied to actions under this provision; that is, the right of action does not accrue until a claimant has had a reasonable *opportunity to discover all the essential* elements of a possible cause of action....."). The Court thus concludes the continuing tort exception under § 2401(b) would apply with equal force to the limitations period contained in § 7433(d)(3).

**7.** Defendants are admonished to comply with the deadlines set forth in the Court's Scheduling Order so as to permit the orderly disposition of this case. Defendants have ignored the Court's past attempts at scheduling. For instance, Defendants' September 12, 1995 motion for summary judgment in Civil Action 2:95–0075 preceded the Scheduling Order's deadline for filing dispositive motions by over one month and appears to have contributed to the confusion which prompted the Court's intervention in this case and subsequent CMO. Accordingly, both parties are advised that any dispositive motions filed prior to the Scheduling Order deadline will be denied summarily.