<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-2145**

———————

L. HALL,

Plaintiff - Appellant,

v.

GREYSTAR MANAGEMENT SERVICES, L.P., d/b/a Greystar
Development and Construction, LP, d/b/a Versailles Apartment
Homes; PSN LANDSCAPING COMPANY, INCORPORATED; RICHARD KELLY,

Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore. James K. Bredar, District Judge.
(1:13-cv-03615-JKB)

———————

Argued: October 27, 2015          Decided: January 21, 2016

———————

Before MOTZ, GREGORY, and HARRIS, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by unpublished
opinion. Judge Gregory wrote the opinion, in which Judge Motz
and Judge Harris joined.

———————

**ARGUED:** Leslie Robert Stellman, PESSIN KATZ LAW, P.A.,
Towson, Maryland, for Appellant. Michael William Skojec,
BALLARD SPAHR LLP, Baltimore, Maryland; Andrew Martin Battista,
ANDREW M. BATTISTA, P.A., Towson, Maryland; Michele J. McDonald,
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland,
for Appellees. **ON BRIEF:** Adam E. Konstas, PESSIN KATZ LAW,
P.A., Towson, Maryland, for Appellant. Michelle M. McGeogh,
BALLARD SPAHR LLP, Baltimore, Maryland, for Appellee Greystar

Management Services, L.P.  Brian E. Frosh, Attorney General of Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee Richard Kelly.

---

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

L. Hall brought this suit against Greystar Management Services, L.P. (GMS), PSN Landscaping Co., Inc. (PSN), and Lieutenant Richard Kelly for, among other things, retaliation in violation of the Fair Housing Act (FHA), 42 U.S.C. § 3601, and conversion. The defendants moved to dismiss Hall's complaint, and the district court granted the motion. Hall then filed motions to reconsider and amend her complaint. The district court denied Hall's motions, finding that any amendment would be futile. Hall now appeals this denial.

Because we conclude that the district court did not abuse its discretion in denying as futile Hall's motion to amend her retaliation claim against GMS and conversion claim against Kelly, we affirm those portions of the district court's decision. We reverse, however, the district court's denial of Hall's motion to amend her conversion claim against GMS and PSN.

I.

A.

We relate the facts – as we must at this stage of the litigation – as presented largely from Hall's proposed amended complaint, with inferences drawn in her favor. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 300 n.3 (4th Cir. 2006).

3

Hall is a resident of Maryland who, between 2005 and 2011, lived at 131A Versailles Court in the Versailles Apartments complex located in Baltimore County. Hall has been diagnosed with "post-polio syndrome together with specific and related comorbidities including dysphagia, respiratory deficit and syncope as well as post traumatic stress disorder, all of which substantially limit major life activities." J.A. 208. She requires a service dog. Id. When she moved into her apartment, Hall "requested and was granted the accommodation of a storage unit" in which to store "materials necessary for the maintenance of her service dog." Id. This accommodation was later made part of a settlement agreement between Hall and the then-owner of the Versailles Apartment and incorporated into Hall's lease.

In 2009, GMS acquired the Versailles Apartments. In August 2010, GMS informed Hall that her use of the storage unit constituted a violation of the fire code. Hall requested that the structure of the storage unit be altered to comply with the fire code, but GMS refused. Hall then requested that GMS relocate her to a three-bedroom apartment. GMS agreed to relocate Hall when a three-bedroom unit became available.

In December 2010, GMS's agents removed Hall's property from the storage unit and disposed of it in dumpsters. Later that month, GMS informed Hall that it would not renew her year-to-

4

year lease, and that she was required to vacate her apartment by April 30, 2011.

In response to these developments, Hall, in February 2011, filed a complaint with the U.S. Department of Housing and Urban Development (HUD), the U.S. Department of Justice and the Maryland Commission on Civil Rights. After Hall filed these complaints, GMS informed Hall that she would not be permitted to move into an accessible three-bedroom apartment because no such unit was available. GMS, however, advertised online the availability of three-bedroom apartments at the Versailles Apartments.

Hall did not vacate the premises by April 30, 2011, and continued to rent the apartment from GMS on a month-to-month basis as she searched for a new apartment. Shortly after April 30, 2011, GMS prosecuted a successful tenant-holding-over action against Hall and obtained a warrant of restitution (i.e., an eviction order) in Baltimore County District Court. Hall appealed to the Circuit Court for Baltimore County. As a result of these legal proceedings, Hall hired professional movers to relocate her personal property. On November 10, 2011, the Circuit Court for Baltimore County denied Hall's appeal. Hall immediately filed a motion for stay of enforcement pending review of the Circuit Court's decision by another judge on the Circuit Court for Baltimore County.

On or about November 22, 2011, the professional movers advised Hall that they would not be able to move her property until December 6 and 7, 2011. Hall informed GMS of this information and paid GMS rent for December 2011, which GMS accepted.

On or about November 30, 2011, the Circuit Court for Baltimore County denied Hall's motion for stay of enforcement. The very next day – December 1, 2011 at around 10:00 a.m. – Kelly of the Baltimore County Sheriff's Office executed GMS's warrant of restitution. PSN, acting as an agent of GMS, removed Hall's property from her apartment. PSN also removed all of Hall's property, including her "purse[,] . . . computers[,] [and] file boxes," which was situated in and about her vehicle outside the premises. J.A. 213. Hall's purse, passport, and computers were ultimately returned to her. That morning, two deputy sheriffs who were on site informed Hall that they "had negotiated an agreement" in which PSN would transport Hall's property to a portable storage unit she owned in exchange for $600. J.A. 214. Hall immediately proceeded to her bank and obtained a cashier's check. Soon thereafter, however, counsel for GMS informed Hall that the agreement was terminated and that PSN would not transport Hall's property to her storage unit.

Under the direction of GMS, PSN employees loaded 15,000 pounds of Hall's property into their trucks, including the

6

property located in and around her vehicle, the vehicle of her housekeeper, and her attorney's vehicle. Kelly informed Hall that PSN was taking her property to the Northern Landfill in Westminster, Maryland. Hall's property, however, never arrived there. The next day, December 2, 2011, Hall learned that 5,000 pounds of her property had arrived at Blue Ridge Landfill in Pennsylvania and had been destroyed. The remaining 10,000 pounds of Hall's property remains unaccounted for.

Following these events, GMS returned Hall's December 2011 rent payment and her security deposit.

B.

On November 27, 2013, Hall filed suit alleging (1) retaliation in violation of the FHA against GMS; (2) conversion against all defendants; (3) violation of Article 26 of the Maryland Declaration of Rights against Kelly; and (4) violation of Title 20 of the State Government Article of the Maryland Code against GMS. J.A. 215-19. Hall sought "compensatory and punitive damages in the amount of $3,000,000" for her conversion claim. J.A. 217.

GMS and Kelly filed motions to dismiss Hall's complaint, and PSN moved for summary judgment, which the district court treated as a motion to dismiss. The district court granted all defendants' motions. The district court dismissed the conversion claim based on its conclusion that, under Baltimore

7

County Code § 35-3-103, Hall's property was deemed abandoned once it was "removed from the leased premises in accordance with a properly issued warrant of restitution," and that abandoned property cannot be converted. J.A. 191. In addition, the district court dismissed the FHA and state-law retaliation claims based on its conclusion that the disposal of Hall's abandoned property "did not constitute an adverse action under the FHA." J.A. 191, 193-94.

On July 30, 2014, Hall filed motions to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) and for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a), which defendants opposed. In the motion to amend, Hall sought to more specifically allege that defendants unlawfully converted the unreturned property she removed from the premises before the warrant of restitution was executed; namely, her file boxes she placed in or around her vehicle, the vehicle of her housekeeper, and her attorney's vehicle.

On October 1, 2014, the district court denied both motions, finding the amended complaint "futile on all counts." J.A. 263. Noting that Hall's amended complaint failed to sufficiently allege "a causal connection between her protected activity . . . and the adverse action," and further failed to allege "discriminatory intent," the district court dismissed the FHA

8

retaliation claim as futile. J.A. 264. Having dismissed Hall's federal claim, the district court retained supplemental jurisdiction over the pendent state law claims "given the simplicity of the analysis" required to resolve the claims. J.A. 265. The district court dismissed Hall's conversion claim as futile based on its conclusion that the amended complaint failed to "include a plausible claim for damages" and failed to identify the damages sought for the property removed prior to eviction. J.A. 266. Hall timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

A district court's decision to deny a motion to alter or amend a complaint under Federal Rule of Civil Procedure 59(e) and its determination of whether to permit the filing of an amended complaint under Federal Rule of Civil Procedure 15(a) are both reviewed for abuse of discretion. Matrix Capital Mgm't Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 192 (4th Cir. 2009).

A Rule 59(e) motion may only be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Mayfield v. Nat'l Ass'n for Stock Car Auto

9

Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). It is an extraordinary remedy that should be applied sparingly. Id. Dispositive in this case, however, is Matrix Capital's dictate that

> the district court may not grant [a Rule 15(a)] motion unless the judgment is vacated pursuant to Rule 59(e) or Rule 60(b). A conclusion that the district court abused its discretion in denying a motion to amend, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion.

Matrix Capital, 576 F.3d at 193 (quoting Laber v. Harvey, 438 F.3d 404, 427-28 (4th Cir. 2006) (en banc)). In other words, "Rule 15(a) and Rule 59(e) motions rise and fall together. Thus, to evaluate whether the motion to reconsider should have been granted, we must determine whether the denial of the motion for leave to amend was proper." Mayfield, 674 F.3d at 378-79.

Rule 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This directive 'gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities.'" Matrix Capital, 576 F.3d at 193 (quoting Laber, 438 F.3d at 426). A request to amend should only be denied if one of three facts is

10

present: "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber, 438 F.3d at 426.

An amendment is futile if the amended claim would fail to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). And while we must accept all of the allegations contained in a complaint as true, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action - supported by mere conclusory statements - do not suffice. Id. A complaint, therefore, must contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678 (holding that a complaint "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not "suffice" (quoting Twombly, 550 U.S. at 557)).

11

III.

Although the conduct of GMS leading up to and during the actual eviction concerns us[1], the law compels the conclusions we reach below.

A.

We consider first Hall's contention that the district court abused its discretion in denying an amendment to her FHA retaliation claim as futile.

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed," rights protected by the FHA. 42 U.S.C. § 3617. To state a claim for retaliation under 42 U.S.C. § 3617 of the FHA, Hall must establish that (1) she was engaged in protected activity; (2) GMS was aware of that activity; (3) GMS took adverse action against her; and (4) a causal connection existed between the protected activity and the asserted adverse action. King v. Rumsfeld, 328 F.3d 145, 150–51 (4th Cir. 2003) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). Because Title VII and the FHA employ

---

[1] Specifically, despite its acceptance of Hall's December 2011 rent with the knowledge and understanding that she could not secure a moving company until December 6 and 7, 2011, GMS evicted Hall on December 1, 2011. Further, it appears that PSN and Hall entered into a verbal agreement, in which PSN would take Hall's property to a portable storage unit Hall secured in exchange for $600; counsel for GMS "terminated" that agreement.

12

similar language and "are part of a coordinated scheme of federal civil rights laws enacted to end discrimination," Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 935 (2d Cir. 1988), much of our FHA jurisprudence is drawn from cases interpreting Title VII. See, e.g., Betsey v. Turtle Creek Assocs., 736 F.2d 983, 987 (4th Cir. 1984); Smith v. Town of Clarkton, N.C., 682 F.2d 1055, 1065 (4th Cir. 1982).

With that understanding, we turn to Hall's proposed amended complaint to determine whether she has alleged facts sufficient to state the elements of her claim of retaliation under 42 U.S.C. § 3617. While Hall did allege that she engaged in protected activity when she filed a HUD complaint, that GMS was aware of that protected activity, and that GMS "acted with malice" when it disposed of her property, she did not allege facts sufficient to show a causal connection – namely, that the reason GMS took the actions it did was because of her protected activity. Hall's amended complaint leaves open to speculation the cause for GMS's decision to destroy her property, and the cause that she asks us to infer – retaliation - is not plausible in light of the "'obvious alternative explanation,'" see Iqbal, 556 U.S. at 682 (quoting Twombly, 550 U.S. at 567), that GMS simply was regaining possession of the leased premises in accordance with the orders of the Baltimore County Court. Indeed, the consequence of allowing Hall's claim to proceed on

13

her amended complaint as stated would be that any person engaged in a protected activity who alleges nothing more than that she was evicted and her property destroyed would be able to survive a Rule 12(b)(6) motion. Such a result cannot be squared with the Supreme Court's command that a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Therefore, Hall's failure to adequately plead facts demonstrating a causal connection is fatal to her claim.

While Hall is correct that "[a]llegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged,'" Tobey v. Jones, 706 F.3d 379, 386 (4th Cir. 2013) (quoting Iqbal, 556 U.S. at 679), no reasonable inference can be drawn here that GMS retaliated against Hall because of her protected activity. Retaliatory conduct, by its very nature, must come after the protected activity. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). Thus, we cannot, as Hall asks, infer causation based on facts that occurred before Hall's protected activity.[2]

_____

[2] For example, GMS's removal and destruction of the storage unit for Hall's service dog occurred before she filed a HUD complaint. Likewise, GMS informed Hall that it would not renew her lease and requested that she vacate the apartment by a date certain occurred before she filed a HUD complaint.

14

The only allegation in Hall's amended complaint that suggests causation is the temporal proximity between Hall's protected activity and GMS's adverse action. In evaluating a retaliation claim, however, a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred "very close" to, Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001), or "shortly after," Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), the defendant became aware of the protected activity. There was a ten-month lapse between Hall's protected activity of filing a HUD complaint in early February 2011 and GMS's adverse action of destroying her property in December 2011. "Action taken – as here – [10] months later suggests, by itself, no causality at all." Clark Cnty. Sch. Dist., 532 U.S. at 273-74; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); Pepper v. Precision Valve Corp., 526 F. App'x 335, 337 (4th Cir. 2013) (finding ten-month lapse insufficient to establish causation) (unpublished); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (four–month period insufficient).

15

For these reasons, we find that the district court did not abuse its discretion in denying Hall's motion to amend her retaliation claim.

B.

Hall also appeals the district court's denial of her motion to amend her conversion claim. Hall contends that the district court erred by concluding that her "failure to include a plausible claim for damages [left] her amended claim for conversion futile." J.A. 266. We agree.

A motion to dismiss pursuant to Rule 12(b)(6) – the standard we apply here, see Perkins, 55 F.3d at 917 – tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The perceived discrepancy that the district court raised – that Hall pleaded the same amount of compensatory and punitive damages in both her original and amended complaints despite the court finding that some of her property was abandoned – merely raises an issue of fact on the question of damages that cannot be resolved on a motion to dismiss. At the motion-to-dismiss stage, the only appropriate inquiry for the district court is whether Hall's proposed amended complaint contained sufficient factual matter, accepted

16

as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. To determine whether Hall's complaint contained sufficient factual matter to state a claim of conversion against each defendant, we must review the elements of conversion under Maryland law and the facts alleged against each defendant.

In Maryland, the intentional tort of conversion requires "an exertion of ownership or dominion over another's personal property in denial of or inconsistent with the owner's right to that property." Nickens v. Mount Vernon Realty Grp., LLC, 54 A.3d 742, 756 (Md. 2012). Here, Hall alleged that PSN, at the direction of GMS's attorney, removed from her possession a number of file boxes she placed in and around her vehicle, her housekeeper's vehicle and her attorney's vehicle prior to the eviction. This property was placed directly "on the trucks owned and operated by PSN." J.A. 213. It was PSN, at the direction of GMS's attorney, that transported all of Hall's property to a landfill where it was destroyed. As a result of this conduct, Hall sought compensatory and punitive damages in the amount of $3,000,000. Certainly, these facts "nudg[e]" Hall's conversion claim against GMS and PSN "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, we find that the district court abused its

17

discretion in denying Hall's motion to amend her conversion claim against GMS and PSN.

There is, however, nothing alleged in Hall's complaint that Kelly exerted ownership or dominion over her property. As Hall concedes, she "never contested that Kelly was carrying out a valid warrant of restitution; rather, she takes issue with the manner in which Kelly executed the warrant . . . ." Hall's Reply Br. at 2. The only fact alleged by Hall is that Kelly supervised the eviction process, which appears to be consistent with Kelly's responsibility to carry out a valid warrant of restitution. There is no allegation that Kelly was an agent of GMS or PSN, that he removed the property personally, or that he directed anyone else to remove the property. In fact, Hall made clear in her complaint that it was GMS's attorney "giving orders to PSN." J.A. 214. For these reasons, we find that Hall failed to state a claim of conversion against Kelly.[3]

C.

Finally, Hall asserts that the district court abused its discretion when it refused to certify a question about the

---

[3] Because Hall failed to address whether the district court abused its discretion in its determination that her remaining state law claims - as alleged in her amended complaint - were futile, we deem these issues waived. See, e.g., Tucker v. Waddell, 83 F.3d 688, 690 n.1 (4th Cir. 1996) (stating issues not addressed in brief or oral argument are waived).

proper interpretation of Baltimore County Code § 35-3-103 to the Maryland Court of Appeals. At no point during the proceedings below did Hall request that the district court certify the interpretation of § 35-3-103 to the Maryland Court of Appeals.

We have repeatedly held that issues raised for the first time on appeal generally will not be considered. See, e.g., Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993); Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." Muth, 1 F.3d at 250 (citing Hanson, 859 F.2d at 318). We can find no evidence in the record that such circumstances exist here. See, e.g., Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974) (concluding that certification of open questions of state law to the state supreme court can "in the long run save time, energy, and resources and helps build a cooperative judicial federalism," but "[i]ts use in a given case rests in the sound discretion of the federal court"); Thompson v. Paul, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."); Enfield v. A.B. Chance Co., 228

19

F.3d 1245, 1255 (10th Cir. 2000) ("Although the issues raised by the City are novel and somewhat difficult, the City did not seek certification until after it received an adverse decision from the district court. That fact alone persuades us that certification is inappropriate."); Perkins v. Clark Equip. Co., Melrose Div., 823 F.2d 207, 209-10 (8th Cir. 1987) (noting that request for certification was not made "until after the motion for summary judgment had been decided against them," and stating that this "practice . . . should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse ruling").

IV.

For the reasons stated, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

20