BYBEE, Circuit Judge,
concurring in the judgment:
I am sympathetic to the majority’s resolution of this case and ultimately agree that, on the record before us, we should reverse the district court’s dismissal and remand for further proceedings. I write separately to address my concern with the majority’s blanket conclusion that the Internal Revenue Service (IRS) was not engaged in “the assessment or collection of any tax,” 28 U.S.C. § 2680(c), simply because “no refunds were due” to the subjects of the IRS investigation in this case, Maj. Op. at 1158-59. In my opinion, that is an unduly narrow construction of § 2680(c). But I agree that Plaintiffs should have an opportunity to show why they can maintain their tort suit against the IRS.
The Federal Torts Claims Act (FTCA) waives the United States’ sovereign immunity for tort claims alleging “money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.” Id. § 1346(b)(1). This waiver, however, is “severely limited” by exceptions listed in § 2680. Morris v. United States, 521 F.2d 872, 874 (9th Cir. 1975). Relevant here is the exception in § 2680(c) for “[a]ny claim arising in respect of the assessment or collection of any tax.”
The FTCA does not define tax “assessment” or “collection.” But the Internal Revenue Code defines the scope of the IRS’s assessment and collection authority. Section 6201, entitled “Assessment authority,” explains that the IRS “is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title.” 26 U.S.C. § 6201(a). An assessment is “made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.” 26 U.S.C. § 6203. Section 6301, entitled “Collection authority,” simply provides that “[t]he Secretary shall collect the taxes imposed by the internal revenue laws.” Thus, in a literal sense, a tax “assessment” is a *1163 recorded determination of tax liability. And a tax “collection” is an effort to obtain a tax liability. As explained below, however, we have not limited the scope of § 2680(c) to literal assessment or collection.
We have addressed the scope of § 2680(c) on only two occasions. In Morris, we interpreted the phrase “the assessment or collection of any tax” to encompass tax investigations and audits. 521 F.2d at 874. There, the IRS harassed and intimidated Morris and his wife during the investigation and, on several occasions, unlawfully seized their property. Id. The IRS also told Morris’s creditors that Morris had a large tax liability and would be insolvent as a result. Id. At the conclusion of its investigation, the IRS determined that Morris had no outstanding tax liability and returned over $6000 in overpaid taxes. Id. Morris and his wife brought an action under the FTCA. We concluded:
Even assuming arguendo that the Internal Revenue agents’ collection activity was beyond the normal scope of authority and amounted to tortious conduct, we find that the claim falls squarely within the exempted group of tort claims arising out of tax collection efforts.
The alleged conduct of the IRS agents, if true, would be deplorable; nevertheless, the district court lacked subject matter jurisdiction over the claims against them.
Id. (citations omitted). The takeaway from Morris is that § 2680(c) covers more than literal tax assessment or collection; it also covers the IRS’s efforts to investigate potential tax liability. This holding is in harmony with the IRS’s assessment authority under 26 U.S.C. § 6201(a), which includes the authority not only to assess taxes in a literal sense (i.e. record a tax liability) but also the authority to make “inquiries” and “determinations” regarding any taxes imposed in the Internal Revenue Code.
Eight years after Morris, we decided Wright v. United States, 719 F.2d 1032 (9th Cir. 1983). Wright had been indicted for failure to file tax returns and for making false statements in his returns. Id. at 1033. The government eventually dismissed the indictments, and Wright filed an FTCA action alleging that the indictments constituted malicious prosecution. Id. The government argued that the indictments were part of “the assessment or collection” of taxes and were thus barred by § 2680(c). Id. at 1035. We noted that the indictments were not collection efforts “[i]n the literal sense” because the prosecution “was an attempt to impose criminal penalties on Wright, not to collect taxes from him.” Id. But we also acknowledged that § 2680(c) “has been broadly construed” and that it would “not strain precedent to hold that ... prosecuting Wright fell within the exception because the prosecution might serve as a deterrent that will facilitate the ‘assessment or collection’ of taxes generally.” Id. Ultimately, however, we rejected that broad construction in light of § 2680(h), which expressly permits claims for malicious prosecution by federal law enforcement officers.[1] There was no dispute that the IRS agent in question was *1164 a federal law enforcement officer, id. at 1034, and we saw nothing in § 2680(h) suggesting “that malicious tax prosecutions are to be tréated differently from other malicious prosecutions,” id. at 1036. To avoid encroaching on § 2680(h), we interpreted § 2680(c) “not to apply to [the IRS agent’s] actions in carrying out the criminal prosecution against plaintiff, insofar as those acts are alleged to constitute malicious prosecution.” Id. Construing § 2680(c) in this manner left both § 2680(c) and § 2680(h) “with a great deal of room to operate.” Id.
Since deciding Wright, we have not had occasion to further opine on what constitutes “the assessment or collection of any tax.”[2] Other circuits, however, have held that a wide array of IRS conduct falls within § 2680(c)’s purview. To say that the statute has been given a broad construction is an understatement. See, e.g., Perkins v. United States, 55 F.3d 910, 913 (4th Cir. 1995) (“The opinions interpreting section 2680(c) clarify that the exemption applies not only to actions by persons against whom the tax collection efforts are directed, but also to actions by third parties injured by tax collection efforts.”); Interfirst Bank Dallas, N.A. v. United States, 769 F.2d 299, 307 (5th Cir. 1985) (“[Section 2680(c) ] gives no indication whatsoever that the exemption is limited to claims ... brought by taxpayers as opposed to third parties. Instead, it specifically applies to all tax-related claims.”); Capozzoli v. Tracey, 663 F.2d 654, 658 (5th Cir. 1981) (“This language is broad enough to encompass any activities of an IRS agent even remotely related to' his or her official duties.”); Broadway Open Air Theatre v. United States, 208 F.2d 257, 259 (4th Cir. 1953) (rejecting an argument that § 2680(c) does not apply to conduct “unrelated to any alleged tax liability between the parties to the suit”). As relevant to this appeal, the Eighth Circuit held in Jones v. United States that § 2680(c) encompasses both civil and criminal tax investigations. See 16 F.3d 979, 980-81 (8th Cir. 1994). In Jones, the court dismissed an FTCA claim arising out of an investigation “that at all relevant times ... was in a criminal status, as opposed to being an administrative or civil matter.” Id. at 980. It did so in spite of the fact that the investigation did not result in “any attempted assessment or collection of taxes or penalties.” Id. According to the court, whether an investigation is civil or criminal in nature “makes no difference” to § 2680(c)’s bar. Id.; see also Perkins, 55 F.3d at 916 (summarily rejecting an argument that § 2680(c) does not apply when the IRS is “conducting a crimi *1165 nal investigation rather than collecting taxes” as having “no basis in law”).
The majority does not dispute Jones’s conclusion that § 2680(c) applies to criminal tax investigations as well as civil tax investigations and, I think, properly so. See Maj. Op. at 1157-58. In a different context, the Supreme Court has commented on “the interrelated criminal/civil nature of a tax fraud inquiry.” United States v. LaSalle Nat’l Bank, 437 U.S. 298, 314, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); see also id. at 314 n.15, 98 S.Ct. 2357. In LaSalle, the Court addressed the scope of the IRS’s summons authority under 26 U.S.C. § 7602. Id. at 305, 98 S.Ct. 2357. That provision has since been modified, but at the time it only permitted the IRS to issue summonses in connection with civil, not criminal, investigations. See id. at 301 n.3, 98 S.Ct. 2357. The question before the Court was whether the statute authorized a summons issued solely for the purpose of building a criminal case. Id. at 307-08, 98 S.Ct. 2357. The Court reasoned that “[flor a fraud investigation to be solely criminal in nature would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties.” Id. at 314, 98 S.Ct. 2357. Committing tax fraud may subject perpetrators to both criminal and civil penalties. Id. at 308, 98 S.Ct. 2357; see also 26 U.S.C. § 7206 (subjecting fraudulent taxpayers to criminal penalties of imprisonment, fines up to $100,000 ($500,000 for corporations), or both, plus costs of prosecution); id. § 6663(a) (adding seventy-five percent of any underpayment to a taxpayers’s tax liability when the underpayment is due to fraud). Those civil penalties are, by statute, considered part of the taxpayer’s tax liability. See 26 U.S.C. § 6201 (“The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title.... ” (emphasis added)). It is thus typically the case that the IRS, when trying to determine criminal liability, is also trying to determine whether, any civil penalties should be added to the taxpayer’s liability. Not only does the IRS have an interest in assessing civil penalties against fraudulent taxpayers, it also has an interest in collecting the unpaid taxes. And “[t]he institutional responsibility of the [IRS] to calculate and to collect civil fraud penalties and fraudulently reported or unreported taxes is not necessarily overturned by a single agent who attempts to build a criminal case.” LaSalle, 437 U.S. at 314, 98 S.Ct. 2357. It is rarely the case that the IRS “abandon[s] ... the pursuit of civil tax determination or collection” simply because it also chooses to investigate potential tax crimes. See id. at 314, 318, 98 S.Ct. 2357.
LaSalle lends support to our conclusion in Wright that a purely criminal prosecution does not constitute tax assessment or collection, although LaSalle also suggests that a purely criminal tax investigation will be rare.[3] “Only [upon the recommendation *1166 of prosecution] do the criminal and civil aspects of a tax fraud case begin to diverge.” Id. at 311, 98 S.Ct. 2357. Although the IRS “does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins,” id. at 311-12, 98 S.Ct. 2357, the imposition of criminal penalties does nothing to further the IRS’s interest in collecting or assessing taxes aside from the deterrent effect on the taxpayer and others, see Wright, 719 F.2d at 1035. The investigation preceding prosecution, however, generally has both civil and criminal motives even when the investigation is “in a criminal status” “at all relevant times.” See Jones, 16 F.3d at 980. But the Court recognized in LaSalle that there is at least the possibility that the IRS could carry out an investigation strictly for the purpose of pressing criminal charges. 437 U.S. at 318, 98 S.Ct. 2357. If it turns out that the IRS has “abandon[ed] in an institutional sense ... the pursuit of civil tax determination or collection,” id., then it is no longer carrying out its tax assessment or collection functions and falls outside the scope of § 2680(c).
Here, the Government argues that its investigation had a civil component because it was trying to determine whether to pay the taxpayers’ claimed refunds. Plaintiffs counter that the sole purpose of the sting operation was to catch criminals that the IRS already suspected were committing tax fraud. In all likelihood, the investigation had both civil and criminal components. See id. at 314, 98 S.Ct. 2357. Specifically, the IRS investigation was likely an effort.to prevent the payment of fraudulent returns and impose civil and criminal penalties, with the civil penalties making up part of the taxpayer’s tax liability. See 26 U.S.C. § 6201. It also seems likely that the IRS would go after any unpaid taxes the subjects of the investigation may owe. But the complaint is ambiguous as to the nature of the investigation. It alleges that the investigation was designed “to identify instances of fraudulent tax returns,” which lends support to the IRS’s contention that it was trying to determine whether it had to pay the refunds. The complaint also alleges that the investigation was an effort to “catch criminals attempting to defraud the IRS.” This allegation highlights the criminal nature of the IRS’s investigation, and, construed narrowly in Plaintiffs’ favor, lends support to the majority’s conclusion that the IRS’s efforts were solely “aimed at snaring tax cheats.” Maj. Op. at 1158. Although I think the complaint fairly suggests both civil and criminal motives, I see no harm in permitting discovery for the purpose of clarifying the nature of the IRS investigation.
The majority reasons that “the targets of the sting operation [were not] trying to enjoy tax-free income by fudging on reporting requirements or ginning up fake deductions” but “were trying to use false identification to claim ‘refunds’ wholly unconnected to payment of taxes.” Id. at 1159. I have two responses. First, the real crux of my disagreement with the majority is its apparent conclusion that IRS efforts to prevent the payment of fraudulently filed refunds do not fall within the broad array of the IRS’s assessment and collection activities. See id. at 1158 (“Plaintiffs allege that the IRS was not assessing the amount of taxes the filers owed, nor was it attempting to collect taxes from them. Instead, it was conducting a sting operation aimed at snaring tax cheaters intent on stealing funds from the United States treasury.”). The majority distinguishes this *1167 case from Aetna Casualty & Surety Co. v. United States, 71 F.3d 475 (2d Cir. 1995), which reasoned that “[t]he payment of refunds when due is an integral part of’- the “mechanism for assessing and collecting taxes” and thus within § 2680(c)’s purview. Id. at 478. The majority concludes that “the payment of refunds when due is not at issue” because “the complaint includes fraudsters who filed fake returns, so no refunds were due.” Maj. Op. at 1158. I do not read Aetna as drawing a line between payment and nonpayment of refunds. Rather, the Second Circuit in Aetna was trying to avoid a narrow construction of § 2680(c) that excluded refunds from assessment and collection efforts. 71 F.3d at 478-79. To conclude, as the majority does, that paying duly owed refunds falls under § 2680(c) while denying refunds does not strike me as unduly narrow. It puts the cart before the horse. If discovery reveals that the IRS was, as it asserts, attempting to determine whether the refund claims at issue were bona fide, then it cannot be the case that the IRS is assessing taxes when it turns out the claims were bona fide but is not when it turns out the claims were bogus. The “[ajssessment authority” given to the IRS in 26 U.S.C. § 6201 includes the ability to make “inquiries, determinations, and assessments of all taxes.” An inquiry into the validity of a taxpayer’s Form 1040 falls squarely within that authority.
Second, even assuming we can distinguish between cheating on the taxes we pay and cheating on the refunds we claim, the majority’s conclusion that the IRS “was not attempting to assess or collect taxes” is, at best, premature. Maj. Op. at 1159. The complaint simply alleges that the IRS was attempting to detect instances of fraudulent tax returns. There are various ways a taxpayer could commit fraud on a tax return, including fudging numbers or claiming fake deductions. The complaint gives an example of one of the investigated taxpayers using a fake ID, but it is far from clear what kind of fraud the other subjects of the investigation might have committed. If discovery reveals that some of the investigated taxpayers were fudging numbers, then, based on the majority’s own reasoning, the majority would agree that the investigation constituted tax assessment. But, in any event, I’m not sure why it matters whether the fraud involved fake IDs or fudged numbers. The IRS’s interest in not paying a fraudulently claimed return is the same regardless of the type of fraud at issue. And a taxpayer who has borrowed an ID from someone else or who has claimed false deductions is still liable for any unpaid taxes.
In short, the majority’s conclusion that the IRS was not engaged in tax assessment or collection rests on an unduly narrow construction of what constitutes tax assessment and collection. I nonetheless agree that we should reverse the district court on the record before us. Plaintiffs should at least get the chance to show that the IRS investigation had no other purpose than to impose criminal penalties.[4]
[[Image here]]
If the subjects of the IRS investigation in question were to bring tort claims against the IRS for conduct related to the investigation into the validity of their claimed returns, I wonder whether any of us would have given pause to the district court’s conclusion that § 2680(c) bars such claims. What makes this case different from all of the other cases applying § 2680(c) to bar claims is not so much the nature of the IRS investigation, but the *1168 fact that Plaintiffs are not the taxpayers at issue and are innocent third parties. We cannot, however, distinguish this case on that ground without doing damage to the statute’s text, see § 2680(c) (“The provisions of this chapter and section 1346(b) of this title shall not apply to ... (c) Any claim arising in respect of the assessment or collection of any tax....” (emphasis added)), or creating an overt circuit split, see, e.g., Interfirst Bank Dallas, N.A., 769 F.2d at 307 (“[Section 2680(c)] gives no indication whatsoever that the exemption is limited to claims ... brought by taxpayers as opposed to third parties.”). That said, I think that our case law fairly gives Plaintiffs a chance to show that the IRS investigation was purely criminal. But I can’t agree with the majority’s conclusion that IRS investigations into the validity of a claimed refund fall outside the scope of § 2680(c).
Finally, it is worth emphasizing what Plaintiffs are not alleging in this lawsuit. They are not alleging that the IRS breached an express or implied contract to make Plaintiffs whole. Nor aré they alleging that the failure to repay Plaintiffs constituted a government taking. These claims would fall under the Tucker Act, which specifically waives immunity for breach of contract and takings claims. 28 U.S.C. § 1491(a)(1). Plaintiffs have raised these claims before the Court of Federal Claims. Without passing on the merits of that lawsuit, breach of contract and takings would seem to be the more natural way of styling Plaintiffs’ claims. Here, however, Plaintiffs’ tort claims arose during the course of an IRS investigation. Further discovery may confirm the Government’s argument that Plaintiffs’ claims arose “in respect of the assessment or collection of any tax” and are thus barred by § 2680(c), but the Plaintiffs should get the opportunity to show otherwise. I don’t think we can conclude that the Government is wrong on this record.
I concur in the judgment only.

. 28 U.S.C. § 2680(h) excepts from the United States’ waiver of sovereign immunity
[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer” means any officer of the Unit *1164 ed States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

. In Smith v. Brady, 972 F.2d 1095 (9th Cir. 1992), we compared § 2680(c) to 26 U.S.C. § 7430. Section 2680(c) was not at issue in that case, but we observed that cases interpreting § 2680(c) "show that a broad range of activity by the IRS arises in connection with the determination of tax liability.” Id. at 1100. In Gasho v. United States, 39 F.3d 1420 (9th Cir. 1994), we addressed § 2680(c)’s exemption for liability from "any claim arising in respect of ... the detention of any goods or merchandise by any officer of customs.” Relying on Wright, the plaintiffs in Gasho argued that § 2680(h), which permits claims for various intentional torts committed by federal law enforcement officers, amended the § 2680(c) bar. We rejected the notion that § 2680(h) in any way amended § 2680(c) so as to waive immunity that would otherwise apply. We held that Wright simply requires "the United States to first demonstrate that the Customs or IRS agent’s tortious conduct falls within the scope of activities exempted in § 2680(c). If such a showing is made, the claim is barred.” Id. at 1433. Because we construed the malicious prosecution in Wright not to constitute an assessment or a collection of a tax "within the strict meaning of those words,” the government had failed to demonstrate that its conduct fell within the scope of § 2680(c). Id.

. There is a good reason for this. Criminal tax evasion is a specific intent crime. In such cases, the government bears a very high burden because it must show that the defendant "willfully attempt[ed] in any manner to evade or defeat any tax.” 26 U.S.C. § 7201. In this context, "willfullness” means the government must “prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and the he voluntarily and intentionally violated that duty.” Cheek v. United States, 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). The Court has long "interpreted the statutory term ‘willfully’ as used in the federal criminal tax statutes as carving out an exception to the traditional rule [that every person is presumed to know the law]. This special treatment of criminal tax offenses is largely due to the complexity of the tax laws.” Id. at 200, 111 S.Ct. 604. The burden of proof in tax prosecutions is thus greater than it is *1166 for other crimes, even where the government 'must show the defendant acted “willfully." See Bryan v. United States, 524 U.S. 184, 193-95, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). Because of the high burden of proof, most tax investigations will have only civil consequences.

. Based on the record before us, I would not reach the Government’s alternative arguments for affirming the dismissal of Plaintiffs' claims.